UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

ANDREW GISSENDANER, individually and
on behalf of others similarly situated,

    Plaintiff,

  v.

CREDIT CORP SOLUTIONS, INC. d/b/a
Tasman Credit,

    Defendant.

_____

**DECISION AND ORDER**

6:18-CV-06313 EAW

## **INTRODUCTION**

Plaintiff Andrew Gissendaner[1] ("Plaintiff") commenced this putative class action, on behalf of himself and others similarly situated, on April 23, 2018, alleging that defendant Credit Corp Solutions, Inc. d/b/a Tasman Credit ("Defendant") sought to collect a debt from Plaintiff and others in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (Dkt. 1). Plaintiff claims that because his credit card account had accrued interest at a rate exceeding that permitted by New York's usury statutes while his balance was pending with the original creditor, Defendant unlawfully attempted to take or receive interest in violation of New York law by seeking to collect the principal due after the account had been charged off. (*See* Dkt. 1 at 5-6; Dkt. 12 at 10-16).

_____

[1] The caption identifies Plaintiff as "Andrew Gissendaner," but several filings identify Plaintiff's last name as "Gissendanner." (*See, e.g.*, Dkt. 1-1; Dkt. 10-3; Dkt. 12; Dkt. 12-2). For purposes of this Decision and Order, the Court will use the spelling that is commensurate with the action's caption.

Presently before the Court are Defendant's motion to dismiss for failure to state a claim and request for sanctions (Dkt. 10), and Plaintiff's cross-motion for sanctions (Dkt. 12). For the following reasons, Defendant's motion to dismiss is granted, Plaintiff's Complaint is dismissed, and Defendant's and Plaintiff's respective motions for sanctions and costs are denied.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint unless otherwise indicated and are assumed true for purposes of this motion. (Dkt. 1). On January 30, 2018, Defendant mailed a letter to Plaintiff seeking to collect an alleged debt "relating to a credit card issued by Synchrony Bank" (the "Letter"). (*Id.* at ¶¶ 10-11; *see* Dkt. 1-1). The Letter informed Plaintiff that Defendant had purchased the debt from Synchrony Bank on December 20, 2017. (Dkt. 1 at ¶ 33). By the time Defendant acquired the debt, Plaintiff had already defaulted on his account balance. (*Id.* at ¶ 14). Plaintiff alleges that, "[u]pon information and belief, Defendant attempted to collect interest at a rate which exceeds New York's maximum rate under its criminal usury statute."[2] (*Id.* at ¶ 34).

As a result, Plaintiff claims that he, and the other members of the putative class, were harmed by Defendant's misrepresentation of the "character, legal status, or amount of the debt" as well as its ability to collect interest above the rate set by New York's criminal usury statute, and by Defendant's threat "to collect interest which could not legally be collected" and its collection of interest in "an amount which was not permitted by New

---

[2]     Nowhere in the Complaint does Plaintiff allege what interest rate was charged against the account balance.

York law," all in violation of 15 U.S.C. §§ 1692e, (2)(A), (5), and 1692f(1). (*Id.* at ¶¶ 35-38). Plaintiff seeks statutory and actual damages on behalf of himself and the members of the putative class as well as recoupment of reasonable attorneys' fees and costs. (*Id.* at 7-8).

## PROCEDURAL HISTORY

On April 23, 2018, Plaintiff commenced this putative class action against Defendant, alleging that Defendant violated the FDCPA by attempting "to collect interest at a rate which exceeds New York's maximum rate under its criminal usury statute." (*Id.* at ¶ 34; *see id.* at ¶¶ 35-38). On June 12, 2018, Defendant filed a motion to dismiss Plaintiff's Complaint, which also includes a request for court-ordered sanctions and costs. (Dkt. 10). Plaintiff opposes Defendant's motion and requests the Court award him attorneys' fees as a counter-sanction for Defendant's own request for sanctions. (Dkt. 12).

## DISCUSSION

### I.    Defendant's Motion to Dismiss is Granted

#### A.    Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017).

To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### B.     Plaintiff's Complaint Fails to State a Claim Under the FDCPA

#### 1.     General Principles

"The Second Circuit has established two principles to assist courts in applying the [FDCPA]. First, 'because the FDCPA is primarily a consumer protection statute,' its terms must be construed liberally to achieve its congressional purpose." *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559 (E.D.N.Y. 2017) (quoting *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016)), *aff'd*, 740 F. App'x 742 (2d Cir. 2018). "Congress enacted the FDCPA to 'eliminate abusive debt collection practices by debt collectors, to

insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017) (quoting 15 U.S.C. § 1692(e)). "The second principle is that, in considering whether a collection notice violates Section 1692e, [courts in this Circuit] apply the 'least sophisticated consumer' standard." *Avila*, 817 F.3d at 75; *see Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) ("In this Circuit, the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993))); *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (stating that the "least-sophisticated-consumer standard" is used to "effectuate" the FDCPA's laudable purpose of "protect[ing] consumers from deceptive or harassing actions taken by debt collectors").

"This hypothetical consumer is a 'naïve' and 'credulous' person," *Ceban v. Capital Mgmt. Servs., L.P.*, No. 17-CV-4554 (ARR) (CLP), 2018 WL 451637, at *2 (E.D.N.Y. Jan. 17, 2018) (quoting *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015)), who is absent "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer," *Avila*, 817 F.3d at 75 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)). "However, she is 'neither irrational nor a dolt.'" *Ceban*, 2018 WL 451637, at *2 (quoting *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010)). As the Seventh Circuit has aptly explained, "[t]he 'unsophisticated consumer' isn't a dimwit. She may be uninformed, naive, [and] trusting,

but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (quotations and citations omitted); *accord Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) ("We have observed . . . that in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness, and that some courts have held that even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." (quotations and citations omitted)).

This Court has recently issued a decision addressing the core legal issue underlying the parties' dispute in this case. *See Cole v. Stephen Einstein & Assoc., P.C.*, No. 6:18-cv-06230 EAW, 2019 WL 453366 (W.D.N.Y. Feb. 5, 2019). The *Cole* action involved the very same law firms that appear on behalf of Plaintiff and Defendant in the instant matter, and the motion papers in that case were, in many ways, substantially similar to those filed here. For this reason, the Court will dive right into the heart of the matter at hand.

Defendant argues that there is "simply no legal support" for the proposition that a debt collector "is unable to collect the *principal amount owed* at charge-off, which may have incorporated interest and other charges levied by the *original creditor*." (Dkt. 10-4 at 13). In fact, while Plaintiff contends, "[u]pon information and belief," that he was

"paying interest at a rate of 29.99%" while his debt was still owned by Synchrony Bank,[3]

Plaintiff has not pursued a claim against Synchrony Bank for the imposition of that interest

rate.

As in *Cole*, Plaintiff relies upon an untenable construction of the New York usury

statute and incorrectly contends that a "logical extension" of *Madden v. Midland Funding,*

*LLC*, 786 F.3d 246 (2d Cir. 2015) would support his theory of FDCPA liability. (Dkt. 12

at 10, 14-16). New York law provides:

> A person is guilty of criminal usury in the second degree when, not being
> authorized or permitted by law to do so, *he knowingly charges, takes or*
> *receives any money or other property as interest on the loan* or forbearance
> of any money or other property, at a rate exceeding twenty-five per centum
> per annum or the equivalent rate for a longer or shorter period.

N.Y. Penal Law § 190.40 (emphasis added). Plaintiff seeks to impose liability upon

Defendant for attempting to "take[] or receive[]" interest in violation of New York's usury

laws, arguing that the very act of collecting the amount owed literally "takes or receives"

interest that has since become part and parcel with the principal. (*See* Dkt. 12 at 14).

However, by its plain language, New York's criminal usury statute applies to the collection

of "*interest* on the loan." N.Y. Penal Law § 190.40 (emphasis added). At the time

Plaintiff's debt was charged off and acquired by Defendant, all past interest charged to his

credit card account by Synchrony Bank had become the principal balance to be paid to

Defendant as his debt collector. *See generally Hahn v. Triumph P'ships LLC*, 557 F.3d

---

[3]     As noted above, Plaintiff makes no mention of this interest rate in his Complaint,
and he supports this assertion based only upon Defendant's motion papers. (*See* Dkt. 12
at 13-14).

755, 757 (7th Cir. 2009) ("[W]hen interest is compounded, today's interest becomes tomorrow's principal, so all past-due amounts accurately may be described as 'principal due'."); *Wahl*, 556 F.3d at 646 ("The interest charged by [the creditor] was very much part of the principal balance in [the debt collector]'s eyes."). Therefore, because Defendant's attempt to collect the principal balance on Plaintiff's credit card account, by definition, did not charge, take, or receive "interest on the loan," it also did not violate or otherwise implicate New York's usury laws.

In an apparent attempt to avert this conclusion, Plaintiff urges this Court to extend the Second Circuit's holding in *Madden* to the facts of this case. The *Madden* decision involved the application of the National Bank Act's preemption provisions in the context of an usurious interest rate charged by a non-national bank entity. The National Bank Act, *see* 12 U.S.C. § 21 *et seq.* ("NBA"), "expressly permits national banks to 'charge on any loan . . . interest at the rate allowed by the laws of the State, Territory, or District where the bank is located,'" *Madden*, 786 F.3d at 250 (quoting 12 U.S.C. § 85). It is well-settled that the NBA "completely preempt[s] analogous state-law usury claims." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 275 (2d Cir. 2005) (citing *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003)). Accordingly, "New York usury law does not apply" to national banks located outside New York State. *Llewellyn v. Asset Acceptance, LLC*, 669 F. App'x 66, 68 (2d Cir. 2016). *Madden* stands for the simple proposition that a non-national bank entity cannot charge an interest rate exceeding that permitted by New York law *after* it has purchased the debt from a national bank entity, in the absence of additional considerations. *See Madden*, 786 F.3d at 250 ("To apply NBA preemption to an action taken by a non-

national bank entity, application of state law to that action must significantly interfere with a national bank's ability to exercise its power under the NBA.").

While the instant matter does not involve a national bank, Plaintiff's debt was originally owned by Synchrony Bank, a federal savings association (*see* Dkt. 1 at 2, 6; Dkt. 10-4 at 13; Dkt. 12 at 11; Dkt. 12-4), which appears to be located in the State of Utah (Dkt. 12-4). For reasons more fully set forth in *Cole*, the Court sees no reason why the rationale in *Madden* would not apply equally to a savings association governed by the Home Owner's Loan Act, 12 U.S.C. § 1461, *et seq.* ("HOLA"), *see Cole*, 2019 WL 453366, at *7-8. Nonetheless, to accept Plaintiff's theory of liability would require this Court to extend *Madden*'s applicability far beyond the Second Circuit's contemplations. For example, in reaching its conclusion in *Madden*, the Second Circuit distinguished *Phipps v. F.D.I.C.*, 417 F.3d 1006 (8th Cir. 2005), where the plaintiffs also challenged the applicability of NBA preemption to certain fees charged against them. *Id.* at 1012-13. The Eighth Circuit rejected the plaintiffs' argument and determined that the fees were charged by the national bank, indicating that "[c]ourts must look at the originating entity (the bank), and not the ongoing assignee . . . in determining whether the NBA applies." *Id.* at 1013 (quotation omitted). In distinguishing *Phipps*, the *Madden* court noted that "the national bank was the entity that charged the interest to which the plaintiffs objected," while "Madden objects only to the interest *charged after* her account was sold by [the national bank] to the defendants." *Madden*, 786 F.3d at 253 (emphasis added). Accordingly, the distinction the Second Circuit drew between *Phipps* and the facts in *Madden* suggests that

interest charged by a national bank—or in this case, a savings association—does not become interest charged by a third-party once the balance has been sold off.

Furthermore, as the Court mentioned in *Cole*, Plaintiff's theory of FDCPA liability would discourage non-savings association entities from purchasing debt from savings associations because any interest lawfully charged by the latter would become unlawfully "taken" or "received" by the former upon issuance of a collection letter. Plaintiff's assertions run counter to the financial reality of interest payments and the role of debt collection agencies in securing balances rightfully owed. The FDCPA was not enacted solely to prevent credulous consumers from falling victim to unscrupulous debt collectors; the statute also serves to "protect[ ] debt collectors from unreasonable constructions of their communications." *Jacobson*, 516 F.3d at 90. Courts in this Circuit "may decline to interpret the FDCPA in a manner that 'would thwart the obvious purpose of the statute.'" *Kropelnicki*, 290 F.3d at 127-28 (quoting *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998)). Construing the FDCPA as a barrier to the collection of principal composed of lawful interest charges would be wholly unreasonable and completely unrelated to the purposes for which the statute was enacted.

Finally, while there are few if any cases that directly address Plaintiff's theory of liability, the Second Circuit's decision in *Llewellyn v. Asset Acceptance, LLC*, 669 F. App'x 66 (2d Cir. 2016) strongly suggests that Plaintiff's position is legally unsound. In *Llewellyn*, the plaintiff challenged the validity of her debt before the district court, arguing that the national bank had "applied an interest rate of 25.99% per annum, in excess of New York's civil and criminal usury laws. . . ." *Llewellyn v. Asset Acceptance, LLC*, No. 14-

CV-411 NSR, 2015 WL 6503893, at *4 (S.D.N.Y. Oct. 26, 2015), *aff'd*, 669 F. App'x 66 (2d Cir. 2016). In confirming the validity of the plaintiff's debt, the district court acknowledged that the national bank was not a party to the suit and determined that "no party in this case is attempting to collect interest from [the p]laintiff in excess of New York's usury laws." *Id.* at *5. On appeal, the Second Circuit noted that because the national bank is "located in South Dakota, . . . New York usury law does not apply" to it. *Llewellyn*, 669 F. App'x at 68. Although the *Llewellyn* court indicated that New York's usury statutes did apply to the defendant debt collectors, it also found that "the district court properly determined that neither defendant charged her usurious interest on her *post-default* debt," and that the "25.99 percent annual interest rate charged on her *pre-default* debt by a national bank did not violate New York usury law" and did not "undermine the validity of the debt now being collected." *Id.* (emphases added).

Likewise, Plaintiff has failed to assert that Defendant ever charged him an usurious interest rate. The fact that Synchrony Bank may have charged Plaintiff an interest rate in excess of New York's usury laws does not invalidate the debt sought by Defendant—Synchrony Bank is located in Utah and thus, New York's usury laws do not apply to it. (*See* Dkt. 12-4); *Llewellyn*, 669 F. App'x at 68. While New York's usury laws do apply to Defendant, its attempt to collect the principal due on Plaintiff's credit card account does not implicate New York's usury statutes and does not violate the FDCPA. Therefore, Defendant's motion to dismiss Plaintiff's Complaint is granted.

## II.    Defendant's and Plaintiff's Respective Requests for Sanctions are Denied

### A.    Defendant's Request for Rule 11 Sanctions is Procedurally Defective

"Rule 11 requires that a motion for sanctions 'be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).'" *Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*, No. 12-CV-0642 (DRH) (AKT), 2014 WL 7338849, at *3 (E.D.N.Y. Dec. 22, 2014) (quoting Fed. R. Civ. P. 11(c) (2)). Rule 11 also requires that "the motion must be served on the offending party twenty-one days before it is filed with the court." *Rogers v. Henry*, No. 16-CV-05271 (KAM)(VMS), 2017 WL 5495805, at *4 (E.D.N.Y. Sept. 12, 2017) (citing Fed. R. Civ. P. 11(c)(2)). "Any motion seeking Rule 11 sanctions that does not comply with these provisions must be denied." *Intravaia*, 2014 WL 7338849, at *3.

As was the case in *Cole*, Defendant's motion for Rule 11 sanctions must be dismissed because it was not made separately from its motion to dismiss. (Dkt. 10); *see Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008) (affirming district court's denial of defendants' Rule 11 motion where defendants "failed to make a separate motion for sanctions under Rule 11, and therefore failed to comply with the procedural requirements of the rule"); *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 89-90 (2d Cir. 1998) (reversing district court's decision to impose sanctions where movant "included its request for sanctions in its letter requesting a Rule 54(b) certification, thereby failing to give [the non-movant] the separate notice referred to in Rule 11"); *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 414-15 (S.D.N.Y. 2016) ("[D]efendants' request for attorneys' fees under Rule 11 was made together with the motion to dismiss rather than as

a separate motion, and for that reason alone it must be denied."); *see also Intravaia*, 2014 WL 7338849, at *6 (stating that "service of a separate motion for sanctions" is necessary to comply with Rule 11's safe harbor provision (citing *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012))).

In addition, Defendant has failed to demonstrate that it served its motion for sanctions upon Plaintiff 21 days before filing it. Indeed, Defendant fails to even assert that it has satisfied Rule 11's "safe harbor" provision in its papers.[4] Accordingly, Defendant has failed to satisfy the procedural prerequisites for seeking Rule 11 sanctions. *See Rogers*, 2017 WL 5495805, at *4 ("Because '[c]ompliance with Rule 11's safe harbor provision is mandatory . . . failure to do so will result in a denial of the sanctions motion.'" (quoting *Libaire v. Kaplan*, No. CIV.A. 06-1500, 2008 WL 794973, at *12 (E.D.N.Y. Mar. 24, 2008))); *Castro v. Mitchell*, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010) ("A motion that fails to comply with the safe harbor provision of Rule 11 must be denied.").

Therefore, without reaching its merits, the Court declines to consider Defendant's request for Rule 11 sanctions, because Defendant failed to comply with Rule 11's procedural requirements in moving for sanctions against Plaintiff. *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 145 (E.D.N.Y. 2014); *Banfield v. UHS Home Attendants, Inc.*, No. 96 CIV. 4850 (JFK), 1997 WL 342422, at *3 (S.D.N.Y. June 23, 1997).

---

[4]    Plaintiff, for his part, has filed an attorney affirmation stating that Defendant did not serve "a Rule 11 motion in this matter prior to filing the Motion to Dismiss and Motion for Sanctions and Costs." (Dkt. 12-2 at ¶ 3). Defendant has not submitted any documentation contradicting Plaintiff's attorney affirmation.

**B.  Defendant's Request that Sanctions be Imposed Pursuant to 28 U.S.C. § 1927 or the Court's Inherent Authority is Without Merit**

"Another vehicle by which a court may issue sanctions is Section 1927 of Title 28 of the United States Code." *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 367 (E.D.N.Y. 2013). Section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "The purpose of the statute is to deter dilatory tactics, unnecessary delays in litigation, and bad faith conduct by attorneys." *Palagonia v. Sachem Cent. Sch. Dist.*, No. 08-CV-0791 (JS)(ETB), 2010 WL 811301, at *2 (E.D.N.Y. Mar. 1, 2010); *see United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics."). However, "[c]ourts in this [C]ircuit construe the statute 'narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'" *Romeo v. Sherry*, 308 F. Supp. 2d 128, 148 (E.D.N.Y. 2004) (quoting *Mone v. C.I.R.*, 774 F.2d 570, 574 (2d Cir. 1985)).

"The court [also] has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Revson v. Cinque & Cinque*,

*P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "Sanctions under the court's inherent power are appropriate when a party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Walker v. Smith*, 277 F. Supp. 2d 297, 301 (S.D.N.Y. 2003) (quoting *Chambers*, 501 U.S. at 45-46).

The "only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power" is that an award granted "under § 1927 [is] made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). "As a consequence, requests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry." *In re Khan*, 488 B.R. 515, 531 (Bankr. E.D.N.Y. 2013), *aff'd sub nom. Dahiya v. Kramer*, No. 13-CV-3079 DLI, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), *aff'd sub nom. In re Khan*, 593 F. App'x 83 (2d Cir. 2015). "To impose sanctions under either § 1927 or this Court's inherent powers, there must be clear evidence that '(1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay.'" *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478-79 (S.D.N.Y. 2018) (emphasis omitted) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)); *see also Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) ("Imposition of sanctions under a court's inherent powers requires a specific finding that an attorney acted in bad faith."); *Int'l Bhd. of Teamsters*, 948 F.2d at 1345 ("Bad faith is the touchstone of an award under [28 U.S.C. § 1927].""). "The decision

to issue sanctions under either ground lies within this Court's broad discretion." *Prevezon Holdings, Ltd.*, 305 F. Supp. 3d at 478.

Here, Defendant fails to offer any evidence that Plaintiff or his counsel acted in bad faith in filing the Complaint. Defendant argues that sanctions are appropriate pursuant to § 1927 and the Court's inherent powers because "the instant Complaint accuses Defendant of engaging in criminal conduct that is not [sic] unsupported by the law or any applicable extension of it." (Dkt. 10-4 at 18). Plaintiff concedes that he has found no case support for his interpretation of New York's usury statute, but instead has sought to raise a novel theory of FDCPA liability. (*See* Dkt. 12 at 10, 15-16).

As the Court indicated in its decision in *Cole*, Defendant's argument is not entirely unjustifiable. There appears to be no authority standing for the proposition that interest, lawfully charged by one entity, becomes unlawfully taken or received by a second entity after the latter has rightfully purchased the balance and seeks to collect the principal. Furthermore, Plaintiff's request that this Court extend *Madden* to cover the facts at issue here is unwarranted and would require this Court to stretch *Madden*'s holding far beyond its intended scope. *See generally Wolters Kluwer Fin. Servs., Inc.*, 564 F.3d at 114 ("Conduct is entirely without color when it lacks any legal or factual basis. . . .").

Nonetheless, "[s]anctions, under any authority, should not be imposed lightly. They are the exception, not the norm, even in the face of aggressive litigation tactics and strategy." *Khan*, 488 B.R. at 528. Although "[b]ad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," *Schlaifer Nance & Co. v. Estate of Warhol*, 194

F.3d 323, 338 (2d Cir. 1999) (quotation omitted), general inferences of bad faith are disfavored by courts in this Circuit, and rightfully so, *see Eisemann*, 204 F.3d at 397 (reversing the imposition of sanctions where "the [c]ourt's conclusory determination that Eisemann's motion was filed in bad faith rested almost entirely on its lack of merit"); *Mahoney*, 290 F.R.D. at 370 (declining to award sanctions even if the plaintiff's counsel "had knowledge that [the plaintiff's claims] regarding the motorcycle accident were meritless" because it is "improper to determine that a party acted in bad faith if that party filed a meritless claim").

These concerns carry even greater weight in this matter where Defendant seeks to impose sanctions for the assertion of a novel—albeit, ill-fashioned—argument in support of an expansive application of a consumer protection statute. *See Nemeroff v. Abelson*, 704 F.2d 652, 654 (2d Cir. 1983) (stating that although a "prevailing defendant is entitled to an award of attorney's fees" if an action is brought "without factual basis and in bad faith," such an award must be issued "with caution to make sure that plaintiffs are not deterred from suing to enforce their rights, especially when enforcement of those rights vindicates the Constitution or acts of Congress"). In fact, courts generally decline to impose sanctions where the purported sanctionable conduct boils down to the advancement of a novel legal theory or a misinterpretation of the law. *See Prevezon Holdings, Ltd.*, 305 F. Supp. 3d at 483 ("Where no previous court has considered a particular or novel issue, sanctions under § 1927 generally are disfavored." (quotation omitted)); *Salvini v. ADVFN PLC*, No. 13 CIV. 7082 (ER), 2016 WL 1703414, at *4 (S.D.N.Y. Apr. 27, 2016) ("Misunderstanding the law or attempting to extend the law to a novel application is not an appropriate basis

for sanctions."); *Classic Tool Design, Inc. v. Castrol Indus. N. Am., Inc.*, 58 F. Supp. 2d 313, 315 (S.D.N.Y. 1999) (declining to award sanctions where the plaintiff's actions were "more nearly reflecting a misunderstanding of the law . . . than as a deliberate insult to the [c]ourt"); *see also Ctr. for Discovery, Inc. v. D.P.*, No. 16CV3936 (MKB) (RER), 2018 WL 1583971, at *13 (E.D.N.Y. Mar. 31, 2018) (noting "that the advancement of novel theories or unique interpretations of case law cannot be the sole basis for Rule 11 sanctions"); *see generally Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) ("The issue of sanctions brings to the surface the tension between the goal of discouraging abuse of the legal system and that of encouraging refinement of the law through the assertion of novel but non-frivolous legal theories.").

Therefore, although Plaintiff's Complaint is based upon an unfounded legal theory, the Court does not find "clear evidence" that Plaintiff or his counsel acted in bad faith in commencing this action. Plaintiff's misunderstanding of the law may have resulted in the assertion of a meritless cause of action, but this alone is not grounds for the imposition of sanctions. Accordingly, the Court declines to impose any award of sanctions on Defendant's behalf.

## C.    Plaintiff's Counter Request for Sanctions is Denied

As in *Cole*, Plaintiff has also interposed a counter request for attorney's fees and costs as a sanction against Defendant for its own motion for sanctions. "[T]he filing of a motion for sanctions is itself subject to the requirements of [Rule 11] and can lead to sanctions." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) (quoting Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments)). While it does

not appear that Plaintiff has complied with the procedural requirements of Rule 11 discussed above, "[a] party defending a Rule 11 motion need not comply with the separate document and safe harbor provision when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001); *see also Lee v. Grand Sichuan E. (N.Y.) Inc.*, No. 12-CV-08652 SN, 2014 WL 199512, at *1 (S.D.N.Y. Jan. 17, 2014) ("A non-moving party seeking costs and attorneys' fees rarely needs to file a cross-motion under Rule 11."); Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments) ("[S]ervice of a cross-motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion."); *see generally Quinio v. Aala*, No. 15-CV-4912-PKC-SJB, 2017 WL 8646668, at *7 n.5 (E.D.N.Y. Dec. 21, 2017) (acknowledging this principle and noting that the exception to Rule 11's procedural requirements "only applies to Rule 11 cross-motions"). Accordingly, Plaintiff's counter request for sanctions is not procedurally defective.

Pursuant to Rule 11(c)(2), "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). Plaintiff has prevailed against Defendant's motion for sanctions insofar as the Court declines to impose sanctions pursuant to § 1927 or its inherent powers. However, the Court's research has not uncovered any authorities directly addressing whether the term, "prevailing party," encompasses those cases where the original Rule 11 motion is denied for the failure to comply with Rule 11's procedural requirements. While

it is unclear whether a party can be deemed a "prevailing party" on a cross-motion for Rule 11 sanctions under such circumstances, the Court need not decide the issue here because sanctions are not "warranted" in this case.

"Rule 11 sanctions are an extraordinary remedy, and a movant must therefore meet a 'high bar' before sanctions are imposed on an adversary." *Lotocky v. Elmira City Sch. Dist.*, 102 F. Supp. 3d 455, 456 (W.D.N.Y. 2015) (quotation omitted).

> A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Kropelnicki*, 290 F.3d at 131 (quotation omitted). "[R]ule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'" *Oliveri*, 803 F.2d at 1275 (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985), *superseded on other grounds as stated by Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017)). "The decision whether to grant sanctions under Rule 11 lies within the discretion of the district court." *Rodenhouse v. Palmyra-Macedon Cent. Sch. Dist.*, No. 07-CV-6438 CJS, 2008 WL 2331314, at *6 (W.D.N.Y. June 3, 2008).

Although the Court did not reach the merits of Defendant's Rule 11 motion, the reasons Defendant advanced for the imposition of sanctions under that Rule are similar to those asserted in support of its related § 1927 and inherent powers arguments. (*See* Dkt. 22-4 at 27-29). Based upon the Court's review of those latter arguments, Defendant's request for a sanctions award under any of these authorities was certainly "well grounded in fact" and "warranted by existing law." *Kropelnicki*, 290 F.3d at 131. Plaintiff contends

that Defendant's motion for sanctions was improperly filed as an intimidation tactic. (Dkt. 12 at 22). However, considering that even Plaintiff concedes he was unable to find case authority in support of his interpretation of the New York usury statute (*see id.* at 15), as well as his flawed belief that *Madden* could form the basis for his claim, there is no indication that Defendant filed its motion for an "improper purpose," or that its request was "utterly without support." *ED Capital, LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 82 (S.D.N.Y. 2016) (denying the plaintiff's request to award "costs and fees associated with defending the Rule 11 Motion" because the Rule 11 Motion was not "filed for an improper purpose" and was not "utterly without support" (citation omitted)); *Lotocky*, 102 F. Supp. 3d at 457-58 (denying cross motion for sanctions where the defendant's "interpretation of the facts and law presented is not unreasonable, nor is it so glaringly frivolous or unfounded as to merit an award of sanctions").

Therefore, because Plaintiff's request for an award of attorneys' fees and costs is not warranted, the Court denies Plaintiff's cross-motion for sanctions.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 10) is granted and Defendant's and Plaintiff's respective requests for sanctions (Dkt. 10; Dkt. 12) are denied. The Clerk of Court is directed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      February 13, 2019
                Rochester, New York